850 So.2d 829 (2003)
Robert Allen DERRICK
v.
YAMAHA POWER SPORTS OF NEW ORLEANS.
No. 03-CA-184.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2003.
*830 Clarence McDonald Leland, Brandon, MS, for Plaintiff/Appellant.
J. Thaddeus Westholz, Hulse & Wanek, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
Claimant, Robert Derrick, appeals the trial court's denial of his workers' compensation claim. The trial court made specific findings that claimant was not a credible witness, that no second accident occurred, and that his claim was prescribed. Accordingly, the trial court dismissed Derrick's disputed claim for workers' compensation with prejudice. This appeal followed.
In his First Assignment of Error, Derrick claims that the trial court erred in finding that his claim for permanent partial disability benefits had prescribed. Second, he argues that the trial court erred in finding that there was no second injury. Third, he argues that the court erred in not awarding supplemental earnings benefits. After a thorough review of the record, we affirm the trial court's judgment.
Derrick was employed at Yahama Power Sports of New Orleans on February 11, 1999, in the finance and insurance department, which involved arranging financing for customers. He was working at the store after hours when he was shot in the right hand by an unknown assailant. He had surgery that placed pins in the hand to set a broken bone. The pins were removed in April of 1999. Yamaha paid Derrick's medical expenses and weekly benefits until March 18, 1999, when he was released by his surgeon, Dr. Juan Escobar, to return to light duty work. He did not return to work at Yamaha, but instead moved to Mississippi to his parents' home and then worked for Southland Mazda in Natchez, Mississippi.
Derrick filed a Form 1008 Disputed Claim for Compensation on March 31, 2000. Therein, he alleged permanent partial disability of his hand, due to the gunshot wound of February 12, 1999. The matter was ultimately set for trial. On November 9, 2001, Yamaha filed a Peremptory Exception of Prescription, alleging that the matter was prescribed under LSA-R.S. 23:1209, because the Form 1008 was filed more than one year after the last payment of benefits.
On December 26, 2001, Derrick filed an Amended Disputed Claim for Compensation, alleging that he had been unable to earn 90% of his pre-injury wages and thus was entitled to Supplemental Earnings Benefits. He also alleged that the surgery to fuse the bones in his hand had failed *831 and that his condition had degenerated to the point that he was unable to find employment due to his total disability. He alleged that he was totally disabled due to the condition of his hand combined with a pre-existing disability to his arm from a previous injury.
On March 12, 2002, Yamaha filed a Motion for Summary Judgment, incorporating the Exception of Prescription and expanding the matter to allege that claimant had violated LSA-R.S. 23:1208 by making willful misrepresentations concerning the development, or lack thereof, of his injury in order to obtain the benefits sought in his untimely-filed 1008 Petition. The misrepresentations were made, Yamaha argued, in an affidavit by Derrick dated January 12, 2002, and in deposition testimony two weeks later, alleging for the first time a second injury to his hand in May, 1999. This alleged second injury took place at Derrick's home when he struck his hand on a kitchen counter while trying to kill a spider. Allegedly this accident caused a nonunion of the bones in his hand, causing him great pain and swelling.
The Exception of Prescription was denied and the matter proceeded to trial on June 26, 2002. Defendant reurged the exception of prescription. The trial court accepted post-trial memoranda from the parties. Judgment in favor of defendant, finding Derrick's claim prescribed, was entered on August 2, 2002. Claimant thereafter moved for a devolutive appeal, which was granted.
The appellate court's standard of review in a workers' compensation case is governed by the manifest error or clearly wrong standard. This standard precludes setting aside a trial court's or a jury's finding of fact in absence of manifest error or unless it is clearly wrong. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. The reviewing court is compelled to review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Wise v. H.B. Zachary Co., 00-3 (La.App. 5 Cir. 4/25/00), 760 So.2d 500.
In this case, the following evidence was presented at trial:
Derrick sustained a gunshot wound while in the course and scope of his employment with Yamaha on February 11, 1999 and was paid disability benefits through March 18, 1999. Derrick filed a Disputed Claim on March 31, 2000, seeking permanent partial disability payments.
LSA-R.S. 23:1209(A) provides:
A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time *832 the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. [Emphasis added].
Though it appears that Derrick's claim has prescribed on its face, Derrick, citing Roy v. Ruth's Chris Steak House, Inc., 525 So.2d 630 (La.App. 3 Cir.1988), first argues that because he did not receive a packet of information from the Office of Worker's Compensation ("OWC"), he was ignorant of his rights. Derrick concludes that pursuant to the doctrine of contra non valentum, prescription of his claim should have been suspended. At trial, the parties stipulated that the Louisiana Department of Labor, OWC, did not possess the original or copies of the First Report of Injury for the accident at issue, and therefore, no informational materials were sent to Derrick by the OWC. Conversely, Yamaha argues that there is no statutory requirement that would bar an employer from asserting a prescription defense amid allegations that it did not forward a First Report of Injury to the OWC.
In Spruiell v. Ludwig,[1] this Court recounted the law on the doctrine of contra non valentem agere nulla currit praescriptio:
A judicially created exception to the running of liberative prescription is afforded by the doctrine of contra non valentem agere nulla currit praescriptio, (prescription does not run against one who is unable to act). The four recognized situations where the doctrine applies to prevent the running of prescription are:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
(2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
The fourth category, commonly known as the discovery rule, provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. Hence, prescription does not accrue. It does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent, and unreasonable. The plaintiff further bears the burden of showing why prescription has not run when the face of the petition reveals that the action is prescribed.
Derrick argues that Yamaha, in allegedly not sending a First Report of Injury to the OWC, constructively prevented him from knowing about his cause of action. Derrick further argues that, to him, his cause of action was not known or reasonably knowable. Yamaha asserts, however, that such an assertion is unreasonable in light of the fact that Derrick consulted with one attorney four months prior to the one-year anniversary date of the shooting, and a second attorney the month of the one-year anniversary date.
*833 Louisiana courts have held in regard to contra non valentem that a cause of action becomes reasonably knowable to a plaintiff at the time that legal counsel is sought. Accordingly, in this case, we find no merit in the Derrick's assertion that the cause of action was not knowable within the one year prescription date.
In his Second Assignment of Error, Derrick argues that the trial court erred in failing to find his petition was timely because it was filed within one year of a second alleged injury to his hand. Citing LSA-R.S. 23:1209 and the case of Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge, 404 So.2d 944 (La.1981), Derrick asserts that the second accident should be regarded as a development of the initial injury, and that suit was properly filed within two years of the initial injury.
Derrick asserts that in May of 1999, while living in Natchez, Mississippi, he hit and re-injured his hand on the edge of a counter top while trying to brush aside a spider. Derrick concedes that he never sought medical attention after the incident, claiming that he did not know that he could obtain workers' compensation for the injury, and did not think that his insurance would cover treatment. On November, 11, 2000, however, Derrick did see Dr. Howard Clark, a general practitioner in Mississippi. Dr. Clark's report makes no mention of second injury to Derrick's hand, though he did diagnose a "non-union fracture of the right fourth metacarpal." Dr. Clark concluded his letter by assigning a 75% disability to the Derrick's right hand. In his deposition, however, Dr. Clark admitted that he had not reviewed the new AMA guidelines regarding impairment ratings, and that if he had, his rating would likely be lower. It is also clear from the deposition testimony that the purpose of this visit was for disability evaluation, not treatment of an injury.
Derrick did not seek any medical treatment following the alleged second accident, until the time he saw Dr. Clark in November of 2000. Thereafter, he did not seek any medical treatment until he underwent an independent medical examination by Dr. Eric R. George on April 5, 2001. Derrick explained that he did not think his new insurance would cover a preexisting condition, he did not know that it might be covered under workers' compensation, and that given that his main complaint was pain, which would be treated with pain medication that Derrick did not believe in, he didn't see a doctor for his hand.
In the history recorded by Dr. George, there is no mention of a second injury to Derrick's hand. At trial Dr. George testified that, other than the initial gunshot wound, Derrick never provided information about a subsequent injury to his hand. Dr. George testified it was possible that Derrick could have informed him about a subsequent injury to the hand at the time of examination, but that it would have been unusual for such information not to have made it into the report.
Dr. George also noted that Dr. Clark's diagnosis of non-union of the bones was made by pushing on Derrick's hand, not by x-ray or other similar diagnostic tool. Dr. George did not believe that such manual manipulation alone was enough criteria to make a diagnosis of non-union. He also testified that it was extremely rare for a non-union of bone to heal without treatment. At the time of his examination of claimant, Dr. George found that the fracture was healed.
The existence of a second injury to his hand was not disclosed by Derrick in his petition, nor was it revealed in Derrick's discovery responses. The record shows that the issue of a possible second injury *834 was not revealed until after Yamaha had filed its Exception of Prescription. Derrick argued that he had not asserted the defense of prescription until late in the lawsuit because he "did not know the exact date when his benefits terminated" and that "there was no reason for him to mention the second injury in the first pleading."
In its August 2, 2002 judgment, the trial court made a specific finding that Derrick was "not a credible witness" and that "there was no second injury to [Derrick's] right hand." As we noted in Smith v. Radisson Suite Hotel New Orleans, 650 So.2d 333 (La.App. 5 Cir.1995):
The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Bruno v. Harbert International, Inc., et al., 593 So.2d 357 (La.1992).
In our determinations of this case, we are bound by the following principles:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). (Citations omitted).
In this case, after a review of the record, we cannot say that the trial court's assessment of Derrick's credibility and the resulting determination that a second accident did not occur is manifestly erroneous. Accordingly, we find Derrick's First and Second Assignments of Error to be without merit.
Finally, Derrick argues that the trial court erred in finding that he was not entitled to Supplemental Earning Benefits (SEBs). LSA-R.S. 23:1221(3) provides that SEBs shall be paid "for injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury."
Claimant bears the initial burden of proving by a preponderance of the evidence that a work related injury prevents him from earning ninety percent or more of his pre-injury wages. Where the claimant has been released to light duty work and refuses his employer's offer of light duty work at the same wage and hours, he is not entitled to SEB. Fusilier v. Slick Const. Co., 94-11 (La.App. 3 Cir. 6/1/94), 640 So.2d 788 (cites omitted).
In this case, Yamaha offered evidence that Derrick's treating physician, Dr. Juan Escobar, informed Derrick on March 12, 1999, that Derrick was able to return to light duty as of that date. On March 16, 1999, Yamaha sent registered letters to two addresses for Derrick informing him that he could return to work on light duty on March 22, 1999. The return receipt for both letters indicated that they had been *835 received at the respective addresses, one of which was his parents' address in Mississippi, though Derrick opined that the signature was not his mother's.
At trial, Derrick testified that he did not return to work at Yamaha because he was afraid to stay in New Orleans after the shooting because he was fearful that the shooter would believe Derrick could identify him. He testified that he explained this to his boss, Mr. Beier, in a telephone call, when he resigned. He denied ever receiving the certified letter from Yamaha, offering him light duty, that was mailed to his parents' home, though he testified that he did receive flowers from Yamaha at his parents' home while he was recovering.
Mr. Karl Beier, co-owner of Yamaha Sports, testified that they sent Derrick two certified letters offering him light duty, on March 16, 1999. He said that it was always his impression that Derrick was coming back to work, until Derrick informed Beier's brother (another co-owner) that he was not.
Immediately after the shooting, Derrick moved to Mississippi, where he got a job at Southland Mazda in Natchez. He worked there for over a year, when he again moved to be closer to his parents, he attested in a sworn affidavit, because his mother was very ill. At the time of trial, he was employed as the general manager of a Toyota dealership in Mississippi.
We conclude that the trial court was correct in denying SEBs. The record shows that Derrick was offered a light duty position at Yamaha, but he refused to return to work for personal reasons.
The record additionally shows that Derrick was able to earn at least 90% of his earned income at Yamaha at his next job, which was at Southland Mazda in Natchez. Derrick's W-2s from 1998 and 1999 were introduced, as was a 1099 from 1999. Mr. Karl Beier explained that Derrick earned money on a commission basis, but was paid on a draw basis, which meant that he was advanced money on draw that he later paid back via commissions on financing he arranged for purchasers. Mr. Beier testified that the 1999 1099 form included advances on commissions that Yamaha had made to Derrick on draw, that Derrick never paid back with new sales, thereby having the effect of paying Derrick money he had not yet earned for sales that he had not yet made. When the adjusted figures are compared to the amounts Derrick earned at his successive jobs, the evidence shows that Derrick was able to earn 90% or more of his income at Yamaha and thus is not entitled to SEBs. Though the evidence suggests that Derrick did not earn this much at jobs he took after the one at Southland, his reasons for leaving each job were not related to his hand injury.
Accordingly, we affirm the trial court's judgment.
AFFIRMED
NOTES
[1] 568 So.2d 133 (La.App. 5 Cir.1990).