# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10736

United States Court of Appeals
Fifth Circuit

**FILED**
March 19, 2019

Lyle W. Cayce
Clerk

ENCOMPASS OFFICE SOLUTIONS, INCORPORATED.,

> Plaintiff–Appellee,

v.

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY., doing business as BlueCross BlueShield of Louisiana.

> Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Encompass Office Solutions, Inc. provided equipment and staffing for doctors to perform surgery in their own offices. Doctors and patients took to this service; insurers did not. Blue Cross and Blue Shield of Louisiana (BCBSLA) began denying Encompass's claims for in-office surgery support. BCBSLA instead paid a "Global Fee" to the doctor who performed the surgery, as compensation for all related services.

Encompass sued BCBSLA for ERISA violations, breach of contract, defamation, and tortious interference with business relations. BCBSLA largely prevailed at trial. But the district court granted a new trial because of error in the jury charge. At the second trial, Encompass won on all claims and obtained a judgment in its favor. On appeal BCBSLA says that the new trial should

No. 17-10736

never have been granted, that no reasonable jury could have answered the *contra non valentem* (discovery rule) issue in favor of Encompass, and that BCBSLA did not abuse its discretion in denying Encompass's claims.

We AFFIRM the judgment of the district court.

## I. BACKGROUND

### A.    Factual

Encompass provided the equipment, drugs, supplies, and nursing staff necessary for a doctor to perform outpatient surgery in his own office, rather than in a hospital or ambulatory surgical center (ASC). This was a novel arrangement—at the time, neither Texas nor Louisiana licensed such mobile providers of ambulatory surgical care.

Generally, when a doctor performs surgery at a hospital or ASC, an insurer like BCBSLA receives three claims: one from the doctor for doing the actual surgery; one from the anesthesiologist, if used; and one from the hospital or ASC for services provided to assist the doctor. When a doctor performs surgery in his office, however, there is no facility claim because there is no separate facility. Instead, BCBSLA pays doctors a Global Fee for these in-office surgeries. The Global Fee is greater than the fee paid to doctors for performing surgery at a hospital or ASC and is intended to compensate for all overhead costs of an in-office procedure.

When Encompass entered the market, it expanded doctors' ability to perform in-office surgeries. Encompass sought compensation from insurers by filing separate claims for its services. At all relevant times, Encompass was an out-of-network service provider for BCBSLA members. Because of this, Encompass obtained an assignment of benefits from each of its BCBSLA-insured patients. BCBSLA paid Encompass's claims for several months after Encompass entered the Louisiana market.

2

No. 17-10736

But in June 2010, BCBSLA received a tip that Encompass was submitting claims for services it had not provided. On investigation, BCBSLA found that Encompass was submitting claims, and being paid, for the same in-office surgeries as the performing doctors. BCBSLA's billing system would normally reject "duplicate" claims for surgery at a doctor's office. But it had been processing Encompass's claims because they used a code modifier. Encompass was using the "TC Modifier," which stands for "technical component" and covers the equipment, staff, and services necessary for surgery.

BCBSLA began denying Encompass's claims. BCBSLA also learned that other insurance companies were doing the same. In August 2010, BCBSLA Vice President Dawn Cantrell sent a letter to in-network providers directing them not to use Encompass's services. Because this letter is the basis for Encompass's defamation and tortious interference claims, we quote it at length:

> Encompass is not eligible to participate in the BlueCross networks and is considered an out-of-network provider. Please do not use Encompass for services provided to BlueCross or [HMO Louisiana, Inc.] members since the facility fees charged by Encompass are not covered, even when they are billed by a network physician. Encompass would have to be a Louisiana licensed [Department of Health and Hospitals]-approved ambulatory surgery facility in order to be eligible for payment of these facility charges.
>
> You should also accept your contracted allowable charge for any eligible in-office surgeries you normally perform to be counted as payment in full and not allow Encompass to submit claims to Blue Cross. **Please ensure your Blue Cross patients are able to receive network benefits for the services they receive from you by using participating providers.**
>
> **If we find that any network physician is repeatedly using Encompass to deliver facility and procedure services that are not eligible for benefits and our members are being**

3

No. 17-10736

**billed for these facility charges, the network physician will
be subject to termination from the Blue Cross networks.**

Encompass obtained a copy of the Cantrell Letter and gave it to counsel. Encompass sought clarification from BCBSLA by calling Cantrell three times and leaving voicemail messages. It received no response. In October 2010, BCBSLA Audit Consultant Alan Lofton sent Encompass a separate letter demanding repayment of nearly $110,000 in paid claims. A few months later, Encompass sued.

**B.    Procedural**

Encompass initially sued BCBSLA for payment on services provided to BCBSLA insureds.[1] Encompass alleged that BCBSLA had abused its discretion in denying Encompass's claims on ERISA-covered plans and breached its insurance contracts under state law by denying claims on non-ERISA plans.

In response, BCBSLA pleaded that under its policy a non-facility provider must seek payment from the site-of-service owner, usually the doctor who orders the services, and that Encompass knew this. BCBSLA explained that for surgeries in a "non-facility setting," the doctor's (and any other professional's) reimbursement is all-inclusive. In other words, BCBSLA pleaded its Global Fee policy.

In February 2013, Encompass deposed Cantrell and Lofton. Cantrell and Lofton testified they were not aware of a BCBSLA policy or benefit plan that said Encompass's services were not covered. And they were similarly unaware of a policy or plan permitting BCBSLA to terminate a physician for partnering with Encompass. This led Encompass to believe that the Cantrell Letter contained false statements. Because the Cantrell Letter damaged Encompass's

---

[1] Encompass's original complaint named only BlueCross BlueShield of Texas. The second amended complaint added BCBSLA and a host of BlueCross entities from other states.

4

No. 17-10736

Louisiana business, Encompass in April 2013 amended its complaint to add claims for defamation and tortious interference with business relations.

Both parties moved for summary judgment. The district court at first granted summary judgment to BCBSLA on Encompass's defamation and tortious interference claims because it held they were barred by Louisiana's one-year prescriptive period.[2] But on a motion for reconsideration it reversed this decision. It held instead that a genuine dispute of material fact existed as to whether Encompass was entitled to the benefit of a discovery rule—*contra non valentem*—that would suspend the prescriptive period.[3]

Trial arrived. Encompass tried its tort claims and non-ERISA contract claims to a jury, and its ERISA claims to the district court. The jury found no liability on the contract claims, and found that Encompass was not entitled to the benefit of *contra non valentem* on the tort claims. Because it resolved the prescription issue in BCBSLA's favor, the jury did not reach the merits of Encompass's tort claims.

Encompass moved for a new trial based on error in the jury charge, and the district court granted the motion. It held that the jury charge had imposed an incorrect liability standard for the non-ERISA contract claims. The original charge for these claims required the jury to find that BCBSLA "capriciously and arbitrarily" denied Encompass's claims for benefits. But it should only have required them to find the elements for Louisiana breach of contract. And, citing the potential for confusion, the court held that Encompass's tort claims must also be retried: "A finding that no breach occurred would reasonably

---

[2] As the district court explained, "[t]he Louisiana Civil Code uses the term . . . 'liberative prescription' for statutes of limitation." *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, No. 3:11-CV-1471-P, 2013 WL 12310676, at *20 n.21 (N.D. Tex. Sept. 17, 2013) (citing *Prescription*, BLACK'S LAW DICTIONARY (9th ed. 2009)).

[3] "*Contra non valentem non currit praescriptio* means that prescription does not run against a person who could not bring his suit." *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012) (citing *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992)).

cause the jury to find that no tort liability existed because the breach of contract claim underpins the basis for the tort claims." The district court did not rule on Encompass's ERISA claims at this stage.

At the second trial the jury found for Encompass on both its contract and tort claims, including finding that *contra non valentem* suspended prescription. The district court also found for Encompass on its ERISA claims. BCBSLA renewed its motion for judgment as a matter of law, moved for reconsideration, and moved for a new trial—all of which the district court denied. The district court entered judgment for Encompass, and BCBSLA appealed.

## II. JURISDICTION AND STANDARDS OF REVIEW

### A. Jurisdiction

The district court had jurisdiction based on complete diversity, 28 U.S.C. § 1332; and under ERISA, 29 U.S.C. §§ 1001 et seq. This court has jurisdiction under 28 U.S.C. § 1291.

### B. Standards of Review

#### 1. Grant of a New Trial

"We review the district court's grant or denial of a new trial for abuse of discretion."[4] "A greater degree of scrutiny, however, is given to the grant of a new trial."[5] "[W]e exercise broad review of a court's grant of a new trial because of our respect for the jury as an institution and our concern that the party who persuaded the jury should not be stripped unfairly of a favorable decision."[6]

---

[4] *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citing *Allied Bank–W., N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993)).

[5] *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989) (citing *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir. 1980) (per curiam)).

[6] *Gutierrez*, 106 F.3d at 687 (alteration in original) (quoting *Stein*, 996 F.2d at 115).

No. 17-10736

## 2.  *Judgment as a Matter of Law*

"We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court."[7] Judgment as a matter of law is proper if "a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[8]

"We review all the evidence in the record in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party; we do not make credibility determinations or weigh the evidence."[9] We "cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."[10] In other words, the party moving for judgment as a matter of law can prevail only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not have arrived at a contrary verdict."[11] Although our review is *de novo*, "[a]fter a jury trial, [the] standard of review is especially deferential."[12]

## 3.  *ERISA § 502(a)(1)(B) Claims*

"On appeal from a bench trial, this court review[s] the factual findings of the trial court for clear error and conclusions of law *de novo*," applying the

---

[7] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (citing *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 392–93 (5th Cir. 2012)).

[8] FED R. CIV. P. 50(a).

[9] *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 395 (5th Cir. 2013) (citing *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008)).

[10] *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (quoting *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 488 (5th Cir. 2004)).

[11] *Homoki*, 717 F.3d at 395 (citing *Poliner*, 537 F.3d at 376).

[12] *Abraham*, 708 F.3d at 620 (second alteration in original) (quoting *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012)).

same standard as the district court.[13] Because the plans at issue grant BCBSLA discretion to determine eligibility for plan benefits and construe the terms of the plans, we apply the abuse of discretion standard.[14] Thus, if BCBSLA's "decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail."[15]

## III. DISCUSSION

### A.   District Court's Grant of a New Trial

In the first trial, the court instructed the jury that BCBSLA was liable on Encompass's non-ERISA claims if it had arbitrarily and capriciously denied claims for benefits:

> The burden is on Encompass to prove that BCBS Louisiana had sufficient proof that payment on a claim was due and that the claim was capriciously and arbitrarily denied by BCBS Louisiana. An insurer is arbitrary and capricious when it does not act in a reasonable manner based on the facts known at the time of the decision.

In its motion for a new trial, Encompass successfully argued that this charge had erroneously imported the arbitrary-and-capricious standard and should, instead, have simply stated the Louisiana elements of contract.

### 1.  *New Trial on the Contract Claims*

BCBSLA contends that the original charge was correct, and the second trial should never have happened. It says that the Louisiana Prompt Payment Statute,[16] not the general contract statute, governs an insurer's breach of a

---

[13] *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 483 (5th Cir. 2017) (alteration in original) (quoting *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015)).

[14] *Id.* (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–19 (2008)).

[15] *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 347 (5th Cir. 2016) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007)).

[16] LA. STAT. ANN. § 22:1821.

health insurance contract. The Prompt Payment Statute imposes penalties on insurers who do not, within 30 days, pay any claim that does not present reasonable grounds for denial:

> All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B of this Section, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent businessman on his guard, exist. . . . Failure to comply with the provisions of this Section shall subject the insurer to a penalty . . . together with attorney fees to be determined by the court. [17]

Although the words "arbitrary and capricious" do not appear in this section, Louisiana courts have adopted that standard for insurer liability.[18] This is because the statute is "penal in nature" and must be "strictly construed."[19] BCBSLA says that because the statute governs "[a]ll claims arising under the terms of health and accident contracts issued in this state,"[20] and specific statutes trump general ones,[21] this section provides the appropriate standard of liability for Encompass's contract claims.

BCBSLA also contends that Encompass itself invoked the Prompt Payment Statute for its non-ERISA contract claims. Besides contract damages, Encompass's operative complaint demanded attorney's fees, costs, and "statutory penalties under Texas and Louisiana law requiring the prompt payment of claims by insurance carriers." And in its submission for the joint

---

[17] *Id.* § 22:1821(A).

[18] *Stewart v. Calcasieu Par. Sch. Bd.*, 933 So. 2d 797, 801 (La. Ct. App. 2006) (interpreting predecessor LA. STAT. ANN. § 22:657).

[19] *Id.* (quoting *Marien v. Gen. Ins. Co. of Am.*, 836 So. 2d 239, 249 (La. Ct. App. 2002)).

[20] LA. STAT. ANN. § 22:1821.

[21] *Cf., e.g.*, *Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1210 (La. 2006) ("[T]he statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." (citing *Kennedy v. Kennedy*, 699 So. 2d 351, 358 (La. 1996))).

pretrial order, Encompass listed "[w]hether BCBSLA abused its discretion by denying Encompass's claims" as a contested legal issue.

Neither of these theories can rehabilitate the first jury charge. Louisiana contract law governs Encompass's claims for benefits under non-ERISA plans because, although it is true that the Prompt Payment Statute applies to all Louisiana health insurance contracts, "[u]nder Louisiana law, the cause of action under [§ 22:1821] is separate and distinct from the cause of action for the breach of the insurance contract."[22] Encompass alleged a Louisiana contract claim. So even if it also alleged a Prompt Payment Statute claim, it had the right to a correct jury instruction on the contract claim.[23] This is particularly true where, as here, it is easier to prove that the defendant breached a contract than that it did so arbitrarily and capriciously.

BCBSLA has another independent argument. It contends that the first jury charge was correct because the insurance plans, by their terms, granted BCBSLA discretion in choosing whether to allow or deny a claim. And in analogous contexts, "abuse of discretion" and "arbitrary and capricious" are legally equivalent.[24] Thus, BCBSLA says that the jury was properly instructed to find contract liability only if BCBSLA had arbitrarily and capriciously denied a claim.

---

[22] *Hymel v. HMO of La., Inc.*, 951 So. 2d 187, 199 (La. Ct. App. 2006) (citing *Cramer v. Ass'n Life Ins. Co., Inc.*, 563 So. 2d 267, 275 (La. Ct. App.), *rev'd on other grounds*, 569 So. 2d 533 (La. 1990)) (interpreting predecessor LA. STAT. ANN. § 22:657); *see Cantrelle Fence & Supply Co., Inc. v. Allstate Ins. Co.*, 515 So. 2d 1074, 1079 (La. 1987) (holding that cause of action under analogous insurance penalty statute was "separate and distinct from the obligation arising out of the contractual relationship under the insurance policy").

[23] *See Aero Int'l, Inc. v. U.S. Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir. 1983) ("[The party] was entitled to have the critical issues bearing upon its liability 'submitted to and answered by the jury upon a clear and proper charge.'" (quoting *NMS Indus., Inc. v. Premium Corp. of Am.*, 451 F.2d 542, 545 (5th Cir. 1971))).

[24] *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) ("[T]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context." (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999))).

No. 17-10736

This theory is not quite correct. BCBSLA argues that the first jury charge properly included an interpretation of the contracts. But the district court rejected this argument when it granted a new trial, holding in effect that the interpretation was not supported by Louisiana law.[25] We agree. No cited Louisiana authority supports an arbitrary and capricious standard for breach of health insurance contracts—even those that grant discretion to the insurer. And the district court has discretion of its own to either interpret contract terms as a matter of law or leave them to the factfinder.[26] "Although the interpretation of a contract is normally a question of law for the Court, that interpretation frequently depends heavily on the resolution of factual disputes. And it is the function of the trier of fact to resolve such factual disputes."[27]

In short, charging the jury with an incorrect standard of liability supports granting a new trial.[28] And the jury indicated confusion from the improper instruction.[29] Its note to the court shows that the erroneous legal standard was front and center in deliberations: "Can you clearly define Arbitrary and Capricious in the eyes of the court[?]"[30] The district court did not abuse its discretion when it granted a new trial on Encompass's contract claims.

---

[25] *See Hymel*, 951 So. 2d at 199 (affirming general contract law jury instruction for contract claim and separate instruction for Prompt Payment Statute claim).

[26] *See Cook Indus., Inc. v. Cmty. Grain, Inc.*, 614 F.2d 978, 980 (5th Cir. 1980) (affirming district court's decision not to interpret contract as matter of law).

[27] *Id.* (citing *Gen. Wholesale Beer Co. v. Theodore Hamm Co.*, 567 F.2d 311, 313 (5th Cir. 1978)).

[28] *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (granting new trial because jury instruction wrongly imposed elevated standard for liability); *Aero*, 713 F.2d at 1113 ("A new trial is the appropriate remedy for prejudicial errors in jury instructions." (citing *NMS Indus., Inc. v. Premium Corp. of Am., Inc.*, 451 F.2d 542, 545 (5th Cir. 1971); *Phillips v. State Farm Mut. Auto. Ins. Co.*, 437 F.2d 365 (5th Cir. 1971))).

[29] *See, e.g.*, *Aero*, 713 F.2d at 1113 n.6 (citing jury note as indication of jury confusion).

[30] The court responded by identifying this sentence in the jury charge: "An insurer is arbitrary and capricious when it does not act in a reasonable manner based on the facts known at the time of the decision."

## 2. *New Trial on the Tort Claims*

The district court held that Encompass's tort claims should also be retried because they were related to the mischarged contract claims. In the district court's view, breach of the contracts was a basis of the tort claims. BCBSLA disputes this. It contends that the jury could not possibly have been confused by overlap of tort and contract issues because it never reached the merits of the tort claims. Indeed, the jury answered "no" to whether Encompass could invoke *contra non valentem* to toll prescription for the tort claims, preventing it from reaching the tort merits questions on the verdict form.

Under Federal Rule of Civil Procedure 59(a), the district court may "grant a new trial on all or some of the issues." "[P]artial new trials should not be resorted to unless it appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."[31] "Therefore, when the issues subject to retrial are so interwoven with other issues in the case that they 'cannot be submitted to the jury independently . . . without confusion and uncertainty, which would amount to a denial of a fair trial,' then it is proper to grant a new trial on all of the issues raised."[32] In addition to considering "interdependence of [the] issues," we also consider "an overlapping of proof" relevant to those issues.[33]

Under this standard, the district court did not abuse its discretion by granting a new trial on the tort claims. Whether Encompass's claims for benefits should have been paid was a common issue between the contract and tort claims—it affects the tort claims because it affects the truth or falsity of

---

[31] *Anderson v. Siemens Corp.*, 335 F.3d 466, 475 (5th Cir. 2003) (quoting *Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479, 481 (5th Cir. 1985)).

[32] *Colonial Leasing*, 770 F.2d at 481 (ellipsis in original) (quoting *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)).

[33] *Id.*

the Cantrell letter.[34] And proof of BCBSLA's internal decision making may be relevant to both whether it performed its contractual duties and whether it defamed or tortiously interfered with Encompass.[35]

## B.    Judgment as a Matter of Law on Encompass's Tort Claims— Prescription and *Contra Non Valentem*

BCBSLA says that the district court should have granted its renewed motion for judgment as a matter of law based on prescription. It is undisputed that the applicable prescriptive period for Encompass's tort claims is one year, and that over a year passed between Encompass receiving the Cantrell letter and first claiming defamation and tortious interference. But the jury in the second trial found that prescription was suspended under the doctrine of *contra non valentem*.

Under Louisiana law, "[t]he defendant has the initial burden of proving that a tort claim has prescribed, but if the defendant shows that one year has passed between the tortious acts and the filing of the lawsuit, then the burden shifts to the plaintiff to prove an exception to prescription."[36] "[C]ontra non valentem prevents the running of liberative prescription . . . where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[37] Under this standard, "[c]onstructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry."[38] "[T]his principle will not exempt the plaintiff's claim from the running of prescription

---

[34] *See Anderson*, 335 F.3d at 475.

[35] *See Colonial Leasing*, 770 F.2d at 481.

[36] *Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002) (citing *Miley v. Consol. Gravity Drainage Dist. No. 1*, 642 So. 2d 693, 696 (La. Ct. App. 1994); *Dixon v. Houck*, 466 So. 2d 57, 59 (La. Ct. App. 1985)).

[37] *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 245 (La. 2010) (citing *Plaquemines Par. Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034 (La. 1987)).

[38] *Id.* at 246 n.12 (quoting *Campo v. Correa*, 828 So.2d 502, 510–11 (La. 2002)).

if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."[39]

The Supreme Court of Louisiana has not evaluated *contra non valentem* for a defamation or false-statement claim. So "we must make an 'Erie guess' and determine as best we can what the highest court of the state would be most likely to decide."[40] We may look to the decisions of intermediate state courts for guidance. "Indeed, 'a decision by an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"[41]

BCBSLA maintains that *contra non valentem* does not apply as a matter of law. Encompass had a copy of the Cantrell Letter in 2010. The letter immediately caused Encompass to confer with counsel and seek clarification from BCBSLA. But Encompass waited until 2013 to allege tort claims. And in BCBSLA's view, Encompass is in a dilemma: Encompass's contract theory, which it was pursuing around the same time it received the Cantrell Letter, requires the letter to be wrong about coverage. But Encompass's *contra non valentem* theory only works if Encompass was ignorant of the letter's falsity.

Encompass contends that the Cantrell Letter falsified BCBSLA internal policies, which it could not discover until 2013 despite diligent inquiry. Although some statements in the letter were independently verifiable, Encompass says others were simultaneously false, damaging, and opaque to

---

[39] *Id.* at 246 (quoting *Renfroe v. State ex rel. Dep't of Transp. & Dev.*, 809 So. 2d 947, 953 (La. 2002)).

[40] *Terrebonne Par.*, 290 F.3d at 317 (citing *Barfield v. Madison County*, 212 F.3d 269, 271–72 (5th Cir. 2000)).

[41] *Id.* (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998)).

outsiders. Encompass argued that the letter misrepresented Encompass's "eligib[ility] to participate in the Blue Cross networks" and "eligib[ility] for benefit payment." Eligibility to be in the network, as distinct from present network status or plan coverage for a service, was a matter of BCBSLA policy. And according to Encompass, "eligib[ility]" for payment was too. Encompass says these statements damaged its business by discouraging doctors from working with it. Encompass also says its diligence to investigate the letter—calling Cantrell three times in 2010 and leaving messages without response—was reasonable under the circumstances.

We believe the Supreme Court of Louisiana would hold that *contra non valentem* was supported by the evidence here. The issue is close and we are mindful of the "especially deferential" standard of review for the jury verdict.[42] BCBSLA challenges only the sufficiency of the evidence, not the jury instruction. The district court rejected BCBSLA's argument when it denied judgment as a matter of law. We do so as well. Our dissenting colleague takes a broader view of constructive notice and a stricter one of the required diligence. But, in this instance, we find no Louisiana case standing directly against *contra non valentem* and some cases that support it, especially given our standard of review.

Louisiana intermediate appellate court decisions show that *contra non valentem* suspends prescription for defamation and other false-statement claims if a reasonably diligent plaintiff knows about the adverse statement but has not discovered it is false. In *Quixx*, for example, the insurer plaintiff received applications containing false statements, but prescription did not begin to run until it discovered facts inconsistent with those statements.[43] (The

---

[42] *Abraham*, 708 F.3d at 620 (quoting *Brown*, 675 F.3d at 477).

[43] *Nat'l Council on Comp. Ins. v. Quixx Temp. Servs., Inc.*, 665 So. 2d 120, 123–24 (La. Ct. App. 1995).

claims were prescribed anyway because the insurer waited more than a year to file suit.[44]) In another case, *Simmons*, the plaintiffs argued that *contra non valentem* suspended prescription of a tortious interference claim until they discovered that the defendant's financial statements were falsified.[45] The court agreed. The plaintiffs did not have constructive knowledge of falsity until receiving disclosures during litigation, even though their dispute with the defendants began over a year earlier.[46] These cases show that a plaintiff can be aware of a statement without having constructive knowledge of its falsity. They also show that a plaintiff need not file suit just because an adverse party publicizes unfavorable statements that are not immediately verifiable.

Cases setting a stricter diligence bar are distinguishable. In *Rozas* the plaintiff, a doctor, argued that *contra non valentem* suspended prescription as long as his former employer withheld a personnel file that defamed him as clinically incompetent.[47] The court disagreed, because the plaintiff's own lack of diligence kept him from getting the file. The court said he should have taken measures "beyond making one telephone call to a secretary."[48] This initially seems comparable to Encompass's diligence. But Rozas was in a different position. He already knew the defamatory statements' general content *and falsity*: The defendant had rated him clinically incompetent.[49] This weighed heavily in the court's analysis that he had constructive knowledge of a cause of action. "[P]laintiff had sufficient facts to make him aware that he potentially had a claim against L.S.U. in 1980 when he learned that L.S.U. had given him

---

[44] *Id.*

[45] *Simmons v. Templeton*, 723 So. 2d 1009, 1012 (La. Ct. App. 1998).

[46] *Id.* at 1011–12.

[47] *Rozas v. Dep't of Health & Human Res.*, 522 So. 2d 1195, 1196–97 (La. Ct. App. 1988).

[48] *Id.* at 1197.

[49] *Id.*

a poor clinical evaluation."[50] But here the falsity concerned BCBSLA's internal policies, and Encompass did not discover it until 2013.

And the appellate cases *Greenblatt* and *Neyrey* are distinguishable because the plaintiffs exercised no diligence at all.[51] These are easier cases where the plaintiffs would have known about a cause of action if they took any timely action to obtain the defendants' adverse statements. The federal district court case *Safford* is similar.[52] Here, in contrast, Encompass sought clarification about the Cantrell Letter multiple times.

Cases stating that consulting with counsel shows constructive knowledge of a claim are also distinguishable. These cases generally involved personal injuries where consulting counsel logically showed awareness of the cause of action.[53] But here the parties were in a business dispute with many potential legal theories. Consulting counsel about one legal injury does not show that a party knew or should have known about other legal injuries that are based on different facts.[54] This is especially so given Encompass's position that the falsity was known only to BCBSLA.

Encompass can escape the posited tort-contract dilemma without contradiction. Encompass says that BCBSLA breached contracts by refusing to pay covered benefits and committed torts by spreading related statements

---

[50] *Id.*

[51] *Greenblatt v. Payne*, 929 So. 2d 193, 196 (La. Ct. App. 2006); *Neyrey v. Lebrun*, 309 So. 2d 722, 723 (La. Ct. App. 1975).

[52] *Safford v. PaineWebber, Inc.*, 730 F. Supp. 15, 18 (E.D. La. 1990) (holding *contra non valentem* inapplicable because defamatory statements were available at plaintiff's request).

[53] *See Med. Review Panel Proceeding of Williams v. Lewis*, 17 So. 3d 26, 30 (La. Ct. App. 2009) (medical malpractice for surgery complication); *Derrick v. Yamaha Power Sports of New Orleans*, 850 So. 2d 829, 833 (La. Ct. App. 2003) (workers compensation for gunshot wound to hand); *Clofer v. Celotex Corp.*, 528 So. 2d 1074, 1076 (La. Ct. App. 1988) (suit against former employer for lung damage).

[54] *See, e.g.*, *Simmons*, 723 So. 2d at 1011–12 (explaining that transaction was in 1986, litigation began in November 1987, falsity was discovered in March 1989, and prescription did not begin to run until March 1989).

that were false.[55] It is not implausible that Encompass immediately considered the Cantrell Letter a breach of contract but only later knew the other statements might be false. Not every anticipatory breach of contract is tortious. Consider: In a garden-variety defamation case, the truth or falsity of the statement is readily knowable to the plaintiff—because it is about the plaintiff.[56] Here, in contrast, Encompass says that BCBSLA defamed it by making false statements about Encompass's status under BCBSLA's own policies. These policies were opaque to Encompass when it received the letter. And Encompass's inquiries to BCBSLA do not show constructive knowledge either. There is no inconsistency in investigating the letter for the ongoing coverage dispute but not knowing it contained false statements.

Encompass's status as a sophisticated corporation does not change this. The Supreme Court of Louisiana teaches that the proper "blueprint" to evaluate reasonable delay for *contra non valentem* is "looking to the record for evidence of facts within plaintiff's knowledge and then examining the reasonableness of plaintiff's inaction in light of those facts, considering plaintiff's education, intelligence and the nature of defendant's conduct."[57] The circumstances of each case determine the applicability of the doctrine.[58] Here the jury heard evidence of each blueprint factor.

Some evidence showed that in 2010 Encompass knew the Cantrell Letter stated unfavorable BCBSLA policies but not that those statements were false. Some evidence also showed that BCBSLA's conduct included misstating its

---

[55] *Cf. Marshall Invs. Corp. v. R.P. Carbone Co.*, No. 05-6486, 2006 WL 2644959, at *5 (E.D. La. Sept. 13, 2006) (malicious statement as element of tortious interference with business relations); *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004) (false statement as element of defamation).

[56] *See, e.g.*, *Safford*, 730 F. Supp. at 16–17 (evaluating alleged defamatory statement that plaintiff engaged in sexual misconduct).

[57] *Wells*, 89 So. 3d at 1151.

[58] *Id.* at 1154.

policies and refusing to clarify things. And some evidence showed that Encompass was a corporation advised by counsel. So the jury had sufficient evidence to assess all the factors that Louisiana law considers.[59] It reached a "Yes" verdict on whether *contra non valentem* applied. In reviewing denial of judgment as a matter of law, we may not reweigh the evidence.[60] Drawing all inferences in favor of Encompass, as we must, the application of *contra non valentem* was not wrong as a matter of law.[61]

## C.     Encompass's ERISA Claims

ERISA aims to promote the interests of plan participants and their beneficiaries and to "protect contractually defined benefits."[62] ERISA enshrines a patient's right to the "full and fair review" of her claim.[63] As a result, § 502(a)(1)(B) permits a plan participant to sue to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[64] Here, Encompass contends that it is an assignee entitled to enforce patients' rights to benefits under BCBSLA plans. BCBSLA challenges Encompass's right to advance claims for benefits, as well as the district court's ultimate conclusion that BCBSLA abused its discretion in administering the plans.

### 1. Anti-Assignment Provisions

BCBSLA says that, under the plans' anti-assignment provisions, Encompass lacked derivative standing to sue for benefits. The district court found that BCBSLA waived the anti-assignment provisions because it made

---

[59] *Id.* at 1151.

[60] *See Homoki*, 717 F.3d at 395.

[61] *See id.*

[62] *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare (NCMC)*, 781 F.3d 182, 194 (5th Cir. 2015) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113–14 (1989)).

[63] 29 U.S.C. § 1133(2).

[64] *Id.* § 1132(a)(1)(B).

payments to, and communicated with, Encompass on at least some claims. BCBSLA's only direct challenge to this conclusion is that Encompass did not offer a jury charge on waiver. To the extent BCBSLA argues that waiver could only have been found by the jury, we disagree. It is well known that ERISA claims are the statutory cousins of equitable actions and so are tried to the court.[65] Waiver of the anti-assignment clauses—a related issue that is itself equitable—was here also properly decided by the district court.[66] So the anti-assignment clauses do not frustrate Encompass's recovery on ERISA claims.

### 2. Contractual Limitations Periods

BCBSLA also contends that the plans' 15-month limitations provisions bar some of Encompass's claims.[67] ERISA § 502(a)(1)(B) contains no statute of limitations, but the parties are free to agree to a reasonable limitations period.[68] The district court held that the contractual limitations provisions here were unenforceable across the board because BCBSLA never gave notice of them to Encompass. It cited decisions from other circuits holding that, based on ERISA's implementing regulations, notice is required for similar provisions to be enforceable.[69] BCBSLA does not appear to dispute this notice theory. As

---

[65] *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir. Unit A 1980) ("[S]imilar claims were previously considered equitable and . . . the kind of determination required—whether the pension fund acted arbitrarily and capriciously—was one traditionally performed by judges." (citing *Wardle v. Cent. States, Se. & Sw. Areas Pension Fund*, 627 F.2d 820, 829–30 (7th Cir. 1980))).

[66] *See* FED. R. CIV. P. 39(a) ("The trial on all issues so demanded must be by jury unless: . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."); *Austin v. Shalala*, 994 F.2d 1170, 1177 n.7 (5th Cir. 1993) (explaining that an equitable defense—even to a legal claim—is tried to the court); *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 752 F.2d 178, 182–83 (5th Cir. 1985) (holding under Texas law that waiver is equitable defense).

[67] BCBSLA maintains that its October 4, 2010 demand letter placed Encompass on notice that its claims would be denied. Encompass waited over 15 months from this date to file suit. So BCBSLA contends that all Encompass claims submitted before October 4, 2010 are barred by limitations.

[68] *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105–06 (2013).

[69] *See Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172, 179–82 (1st Cir. 2016) (citing 29 C.F.R. § 2560.503–1(g)(1)(iv) for proposition that administrator must provide notice of

a result, we do not disturb the district court's conclusion that the contractual limitations provisions are unenforceable.

### 3. *Abuse of Discretion*

We now review the merits of Encompass's ERISA claims. To determine whether an administrator abused its discretion in construing a plan's terms, we analyze its plan interpretation in two steps.[70] First, was BCBSLA's reading "legally correct"?[71] ERISA plans must be written "to be understood by the average plan participant,"[72] so plans "are interpreted in their ordinary and popular sense as would a person of average intelligence and experience."[73] The "most important factor to consider" is whether BCBSLA's "interpretation is consistent with a fair reading of the plan[s]."[74] If so, the inquiry ends, and there was no abuse of discretion.[75] Otherwise, the court "must then determine whether [BCBSLA's] decision was an abuse of discretion."[76] "[T]his court may bypass, without deciding, the issue whether the Plan Administrator's denial was legally correct, reviewing only whether the Plan Administrator abused its discretion in denying the claim if that can be more readily determined."[77]

In the second step—deciding whether BCBSLA abused its discretion— the court considers "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the

---

limitations period when denying benefits); *Mirza v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 137–38 (3d Cir. 2015) (same); *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503, 507 (6th Cir. 2014) (same).

[70] *Humble Surgical Hosp.*, 878 F.3d at 483; *NCMC*, 781 F.3d at 195 (citing *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009)).

[71] *Humble Surgical Hosp.*, 878 F.3d at 483 (quoting *NCMC*, 781 F.3d at 195).

[72] 29 U.S.C. § 1022(a).

[73] *NCMC*, 781 F.3d at 195 (quoting *Stone*, 570 F.3d at 260).

[74] *Id.* at 195 (alteration in original) (quoting *Crowell v. Shell Oil Co.,* 541 F.3d 295, 313 (5th Cir. 2008)).

[75] *Humble Surgical Hosp.*, 878 F.3d at 483.

[76] *Id.* (quoting *Stone*, 570 F.3d at 257).

[77] *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 n.10 (5th Cir. 2014) (alterations and internal quotation marks omitted).

appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith."[78] "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously."[79]

Here, the district court only addressed the second step—whether BCBSLA abused its discretion. We take the same approach.[80] This is appropriate because all agree that Encompass's services were covered under the plans, and the only dispute is whether Encompass's claims are "duplicative" of other providers.

BCBSLA paid doctors a Global Fee for all services related to surgeries performed at their offices. The Global Fee compensated a doctor for both his professional services and the use of his facility. But when surgery was done at a hospital or ASC, BCBSLA made separate payments to those providers to compensate for use of their facilities and services. In BCBSLA's view, Encompass is distinguishable from hospitals and ASCs because it is only a service provider, not a physical facility. And for surgery at a doctor's office, BCBSLA's fee already included compensation for both his professional services and a facility. Thus, according to BCBSLA, any other payment would be duplicative.

This approach is not internally consistent. BCBSLA admits that the plans cover services like Encompass's, but cites no plan language authorizing it to limit payment based on who provided the service.[81] Nor does BCBSLA

---

[78] *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638 (5th Cir. 1992) (citing *Batchelor v. Int'l Bhd. of Elec. Workers Local 861 Pension & Ret. Fund*, 877 F.2d 441, 445–48 (5th Cir. 1989)).

[79] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 829 (5th Cir. 1996) (citing *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994)).

[80] *See, e.g.*, *McCorkle*, 757 F.3d at 457 n.10; *Bellaire*, 97 F.3d at 829 (finding abuse of discretion without deciding legal correctness).

[81] *See Vega*, 188 F.3d at 302 ("[W]e will not countenance a denial of a claim solely because an administrator suspects something may be awry. Although we owe deference to an

explain—in terms of the plan—why it may insist on a Global Fee when surgery is done at a doctor's office, but make separate payments when it is done at a hospital or ASC.[82] And when BCBSLA denied Encompass's claims, this arrangement was not set out in any written internal policy.

As for the other two abuse-of-discretion factors, we first note that the factual background of BCBSLA's decision shows equivocation over whether to do business with Encompass, rather than a clear understanding that its claims were improper.[83] As one BCBSLA executive emailed internally, "Quite honestly, I'm not one hundred percent sure why we are not contracting with them, because I don't believe we have a concrete policy on this provider type or maybe I missed that somewhere." Finally, neither party cites regulations that materially affect whether Encompass's claims should have been paid.[84]

In sum, BCBSLA abused its discretion by arbitrarily denying Encompass's claims for covered services, as shown by its inconsistent treatment of similar providers.

## IV. CONCLUSION

We AFFIRM the judgment of the district court.

---

administrator's reasoned decision, we owe no deference to the administrator's unsupported suspicions.").

[82] *See Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 347 (5th Cir. 2002) ("lack of objectivity" suggests abuse of discretion), *overruled on other grounds by Glenn*, 554 U.S. at 115–19.

[83] *See Wildbur*, 974 F.2d at 638.

[84] *See id.*

No. 17-10736

EDITH H. JONES, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion upholding the contra non valentem exception to prescription for this sophisticated medical services company that was fully represented by counsel from virtually the moment it reviewed the Cantrell letter. This is not an issue on which deference to the jury verdict is required. The facts are plain and undisputed. Encompass and its counsel were on more than "inquiry notice" from the terms of the letter—they had actual knowledge of the alleged false and defamatory statements in that letter. Encompass's counsel explained the company's position succinctly in closing argument. According to him, the letter contained three "false statements": Encompass was not "eligible to participate" in the Blue Cross networks; facility fees charged by Encompass "are not covered" even when billed by the network physician; and Encompass had to be state-licensed to be "eligible" for reimbursement.

Encompass sued BlueCross BlueShield of Louisiana ("BCBSLA") not long thereafter, following its related suit against Texas Blue Cross, on a theory of breach of contract arising from this letter and BCBSLA's failure to pay Encompass for its services on behalf of insureds. Encompass knew from the outset it was "eligible," and it knew there was no "state license" requirement. As for the third falsehood, it knew quite enough, that BCBSLA was not reimbursing it for in-office surgical assistance because of the claimed scope of insurance coverage. Whether coverage denial was because of the policy language or internal company policies, or both, or neither, is precisely the kind of nuance a lawyer should investigate. But it took Encompass three years after filing suit to add this intimately related claim for falsehood and defamation.

24

"Louisiana courts have held in regard to contra non valentem that a cause of action becomes reasonably knowable to a plaintiff at the time legal counsel is sought." *Derrick v. Yamaha Power Sports of New Orleans*, 850 So.2d 829, 833 (La. Ct. App. 2003). Moreover, a defendant's refusal to provide a document that a plaintiff believes to contain information adverse to his interests does not excuse the plaintiff's lack of diligence in obtaining the document. *Rozas v. Dep't Health & Human Res.*, 522 So.2d 1195, 1197 (La. Ct. App. 1988). *See also Greenblatt v. Payne*, 929 So.2d 193, 195 (La. Ct. App. 2006) ("[Plaintiff] does not allege any facts indicating the reason for the passage of time between April of 2000, when she learned of the adverse nature of the letter, and July 2003 when her discovery request was granted by [Defendant's] counsel."); *Safford v. PaineWebber, Inc.*, 730 F. Supp. 15, 17 (E.D. La. 1990) ("[P]rescription in this case commenced to run when plaintiff received notice that documents had been filed by defendant.").

Importantly, misleading conduct by a defendant does not lift the burden of diligence from a sophisticated plaintiff who knows or reasonably should know that further inquiry would reveal a cause of action. *Marin v. Exxon Mobil Corp.*, 48 So.3d 234, 252 (La. 2010). Add to this the insurer's refusal to respond to three telephoned requests by Encompass for an explanation of coverage denial. Such stonewalling should have heightened Encompass's and its lawyers' diligence rather than provide an excuse for non-discovery of a new claim.

Although my colleagues have diligently reviewed Louisiana law on contra non valentem, I respectfully disagree with their application of those cases to these facts. I would reverse the judgment for extracontractual and punitive damages.