927 So.2d 557 (2006)
Paul SEIDL
v.
ZATARAIN'S, INC.
No. 05-CA-780.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
*558 John B. Fox, Robert W. Booksh, Jr., John Fox & Associates, L.L.C., New Orleans, Louisiana, for Plaintiff/Appellant.
Andre C. Gaudin, Charles W. Farr, Burglass & Tankersley, L.L.C., Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
In this workers' compensation case, the plaintiff, Paul Seidl, appeals from two rulings by the trial court, which respectively held that Seidl's claim for attorney's fees had prescribed and further granted summary judgment in favor of the defendant on the issue of Seidl's entitlement to Supplemental Earnings Benefits. For the reasons that follow, we affirm both judgments.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Paul Seidl ("Seidl"), was employed by defendant, Zatarain's, Inc. ("Zatarain's"), when he became injured during the course and scope of his employment on December 3, 2001. From December 4, 2001 through February 25, 2002, Seidl was paid total disability benefits. After returning to work at Zatarain's, Seidl voluntarily left his employment there on May 13, 2002.
After Seidl filed a Disputed Claim for Compensation with The Office of Workers' Compensation, District 7, Zatarain's filed an answer, along with a Peremptory Exception of Prescription, as to Seidl's claim for permanent partial benefits due to scarring. The exception was granted through a consent judgment on January 10, 2005.
Thereafter, Zatarain's filed a Motion for Summary Judgment regarding Seidl's claim for Supplemental Earnings Benefits (SEB), and a Peremptory Exception of Prescription in opposition to Seidl's claims for penalties and attorney's fees. Following a hearing on May 20, 2005, the workers' compensation judge granted both Zatarain's Exception of Prescription and its Motion For Summary Judgment in an order dated May 20, 2005.
Seidl timely filed the present appeal.

LAW AND ARGUMENT
On appeal, Seidl raises two assignments of error: (1) The lower court erred in holding that general tort law prescription of one year applies to bar the claims for penalties and attorney's fees filed within three years of the last payment of medicals, and (2) The trial court erred in granting summary judgment on the issue of entitlement to SEB benefits where there was a genuine issue of material fact in relation to the medical evidence presented.
The appellate court's standard of review in a workers' compensation case is governed by the manifest error or clearly wrong standard.[1] This standard precludes setting aside a trial court's or a jury's finding of fact in absence of manifest error or unless it is clearly wrong.[2] In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or *559 wrong, but whether the factfinder's conclusion was a reasonable one.[3] The reviewing court is compelled to review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.[4] The Louisiana Supreme Court has emphasized that it is crucial that the reviewing court keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[5]
In his first assignment of error, Seidl contends that that trial court erred in holding that general tort law prescription of one year applies to bar the claims for penalties and attorney's fees filed within three years of the last payment of medical expenses. At trial, Seidl argued that he was entitled to penalties and attorney's fees because of an alleged late payment of his medical expenses and prescription costs by Zatarain's.
The trial court, in its Reasons for Judgment, succinctly framed the argument of both Seidl and Zatarain's on this issue:
In his memorandum, Claimant's counsel states the obvious: that when medical payments have been made in a workers' compensation claim, prescription tolls three years after the making of the last payment of medical benefits. And the Court agrees, this is a well-settled jurisprudential rule in Louisiana. However, he then makes a quantum leap into an area where no court has gone before, and asserts that ANY claim which arises out of a claim for medical benefits must also be allocated the three year prescriptive period of Section C of R.S. 23:1209. Therefore, [Seidl contends] he has three years after the untimely payment of a medical benefit in which to assert his claim for penalties and/or attorney fees.
Defendant maintains that any claim for penalties and attorney fees for alleged violation of R.S. 23:1201(E) has prescribed. As authority, he cites the only case on point which the Court has been able to find: In Craig v. Bantek West, Inc., 03-2757 (La.App. 1 Cir. 9/17/04), 885 So.2d 1234, that court held that a claim for penalties and attorney fees brought pursuant to R.S. 23:1201 is subject to a one year prescriptive period for delictual actions found in La. Civ.Code art. 3492. Thus, [defendant contends] any claim for penalties and attorney fees must be filed within one year of the alleged wrongful conduct.
Claimant's counsel characterizes the court in the Craig case as having reached an absurd result by allowing different prescriptive periods to apply to claims arising out of the same factual circumstances. Claimant's counsel chooses to ignore the fact that R.S. 23:1209 itself provides for different prescriptive periods for claims arising out of the same factual circumstances, as for instance between temporary total disability benefits and supplemental earnings benefits, or between indemnity benefits and medical benefits. The legislative will expressed in the statute is that there are many different prescriptive periods for claims arising out of the same factual circumstances.
On appeal, Zatarain's still contends that Seidl's action for attorney's fees and penalties *560 is governed by LSA-R.S. 23:1201 which states, in relevant part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. . . .
Seidl maintains, however, as he did in the lower court, that LSA-R.S. 23:1209, the workers' compensation prescription statute, should have guided the trial court's decision. That statute, in relevant part, reads:
C. All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
(Emphasis added.) After a review of the record before us, we begin our analysis with a finding that LSA-R.S. 23:1201 governs the issue.
In a case involving a similar issue to the one at bar, Craig v. Bantek West, Inc.,[6] cited by the trial court, the plaintiff in a workers' compensation suit sought penalties and attorney's fees for what he contended to be late payment of medical benefits by his employer. In analyzing the prescriptive period for such an action, the First Circuit provided the following reasoning, which we find illustrative:
The prescriptive period applicable to claims for workers' compensation benefits is set forth in La. R.S. 23:1209. Pursuant to section A of this statute, claims for workers' compensation benefits are barred unless filed within: (1) one year from the date of the accident; (2) one year from the last compensation payment for total disability or three years from the last payment for partial disability; or (3) one year from the time the injury develops if not immediately manifested, but, in any event, no more than two years after the accident. However, there is no reference in this statute to the prescriptive period applicable to claims for penalties and attorney fees.
Pursuant to La. R.S. 23:1201(F), penalties and attorney fees may be awarded as follows:
Failure to provide payment in accordance with this Section . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per *561 calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim....
As set forth in La. R.S. 23:1201(F)(1), "[s]uch penalty and attorney fees shall be assessed against either the employer or insurer, depending upon fault." Moreover, no such penalties and attorney fees can be awarded "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La. R.S. 23:1201(F)(2).
The statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Barber Bros. Contracting v. Young, XXXX-XXXX, p. 7 (La.App. 1 Cir. 2/23/04), 873 So.2d 677, 681, writ denied, XXXX-XXXX (La.5/7/04), 872 So.2d 1084.
. . .
It is well settled in Louisiana jurisprudence that the purpose of a prescription statute is to afford a defendant economic and psychological security if a cause of action is not pleaded timely and to protect the defendant from stale claims and the loss of relevant proof. Terrel v. Perkins, 96-2629, p. 4 (La.App. 1 Cir. 11/7/97), 704 So.2d 35, 38. As previously noted, a claim for penalties and attorney fees necessitates an inquiry into the fault of Bantek and/or its insurer and a determination of whether the parties' actions clearly negate good faith and just cause with respect to the handling of Mr. Craig's workers' compensation claim. Although such a claim is delictual in nature, it is "integrally related to the judicious administration of workers' compensation claims" and properly arises under the jurisdiction of the workers' compensation courts. See Clarendon Nat. Ins. Co. v. Weston, 97-1089 (La.App. 1 Cir.5/15/98), 712 So.2d 628, supra. Thus, we find no error in the application of the one-year prescriptive period set forth in Article 3492 to Mr. Craig's claims herein for penalties and attorney fees.[7]
(Emphasis added.) In spite of the fact that the Louisiana Supreme Court left the First Circuit's decision in Craig stand by denying writs in that case, Seidl argues on appeal that Craig is fundamentally flawed. We disagree.
In its Reasons for Judgment in the present case, the trial court wrote that "This Court concluded that based upon the law and the jurisprudence that the claims for penalties and attorney fees for the non-payment of certain medical bills and prescriptions in this matter are barred by the liberative prescription of one year." In applying the holding in Craig to the present facts, we find no error on the part of the lower court, and, accordingly, we uphold the Exception of Prescription.
In his second assignment of error, Seidl asserts that the trial court erred in granting summary judgment on the issue of his entitlement to SEB benefits. Conversely, Zatarain's argues that Seidl did not suffer a loss of earning capacity as a result of the accident and that, because he voluntarily left his employment, Seidl's claim for SEB was properly dismissed on summary judgment.
It is well settled that appellate courts review summary judgments de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate.[8] Thus, this *562 Court must consider whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law.[9] Moreover, the summary judgment procedure is favored, and shall be construed, as it was intended, to secure the just, speedy, and inexpensive determination of most actions.[10]
The record in this case shows that Seidl injured his left hand on December 3, 2001 while working as a mixer operator for Zatarain's for a wage of $7.45 per hour. Seidl received temporary total disability from December 4, 2001 through February 25, 2002, though he had returned to light-duty work with Zatarain's prior to that date. Dr. Jonathan Boraski, Seidl's treating physician, released Seidl to full-duty work on March 21, 2002, and, at that time Seidl returned to his former position, earning his prior wage for the same amount of hours worked. Dr. Boraski had assigned a five percent impairment to Seidl's hand, a three percent of the upper extremity, and three percent to the person as a whole. Seidl resigned his position with Zatarain's on May 13, 2002. According to his deposition testimony, he voluntarily left his job because he felt that his supervisors were uncaring about him.
Following his departure from Zatarain's, Seidl obtained two additional medical opinions regarding his impairment rating. After an examination on June 20, 2002, Dr. John Lindsey opined that Seidl had sustained two percent impairment of the upper extremity and one percent impairment of the person as a whole. Dr. Lindsey did not place any restrictions on Seidl's ability to work. A third opinion from Dr. Harold Stokes reported that Seidl had ulnar nerve neuropathy that was unrelated to his employment with Zatarain's. Dr. Stokes opined that Seidl could work as a machine operator.
At the hearing on Zatarain's Motion for Summary Judgment, the following exchange took place between the Court and plaintiff's counsel:
THE COURT:
One of the things I noticed is that nowhere is there any contradictory medical evidence. And as you know, SEB says that one is not capable of earning at least 90 percent of his pre-injury wage because of the injury.
Now, here, I was struck by the fact that after Dr. Boraski assigned a disability rating  and Mr. Seidl was not happy with that, obviously  he goes on his own to Dr. Lindsey, who gives him an even lesser disability rating. And then to Harold Stokes, who is the "gold" standard in this community for injuries involving the hand or wrist. And Harold Stokes says, "He can do anything he wants to." So, where is there any medical evidence that says that Mr. Seidl would be prevented because of this injury, from earning at least 90 percent?
PLAINTIFF'S COUNSEL:
Well, you see, he wanted to go back to work. We don't have the medical evidence, but he was  you know, he started suffering, you know, substantial pain in his hand, trying to make  lift and utilize it. And there was numbness and pain in his hand that caused him to have to give up the work.
THE COURT:
And yet he saw these two people subsequent to leaving his position, who said "no restrictions." You know, so, that's 
PLAINTIFF'S COUNSEL:
I have no medical evidence.
*563 After considering the evidence presented, the trial court stated in its Reasons For Judgment:
The purpose of supplemental earnings benefits is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. A workers' compensation claimant seeking supplemental earnings benefits has the burden of proving by a preponderance of the evidence that a work-related injury prevents him from earning 90% or more of his pre-injury wages. Derrick v. Yamaha Power Sports of New Orleans, 03-184 (La.App. 5 Cir.6/19/03), 850 So.2d 829[sic]. Where the claimant has been released to light-duty work and refuses his employer's offer of light-duty work at the same wages and hours, he is not entitled to SEB. Id.

In the instant case, Seidl was released to return to work, first to light duty and then to full duty, by Dr. Jonathan Boraski. Zatarain's made work available for him, and he actually returned to work in the same position, earning the same wages and earning the same amount of hours ... Seidl continued working at Zatarain's until May 13, 2002, when he voluntarily quit him employment. He testified the reason he quit was not because of his inability to perform his work, but because he felt that his supervisors did not care about him. Regardless, the evidence establishes that he was capable of and actually did return to work at no wage loss after he was released to return to work by his treating physician. His decision to quit his job for purely personal reasons does not entitle him to SEB.
Regardless of the reasons why Seidl quit his job, he is unable to meet his burden of proving that his injuries prevent him from earning 90% or more of his pre-injury wages. Every physician who examined Seidl has concluded that he is capable of returning to work at full duty with no restrictions. Without medical evidence to establish that he has a disability that prevents him from earning 90% or more of his pre-accident wages, Seidl cannot meet his burden of proving entitlement to SEB.
As correctly noted by the trial court, the claimant in a supplemental earnings benefits case must prove by a preponderance of the evidence that his work-related injury rendered him unable to earn ninety percent of his pre-injury wages. Because this is a question of fact the appellate court may not set aside the hearing officer's findings in this regard absent manifest error or unless the findings are clearly wrong. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.[11]
After a review of the record in this case, we cannot say that the trial court erred in finding that no genuine issue of material fact existed that would have precluded summary judgment. When Seidl was released back to work following his injury, Zatarain's offered him both light and full duty employment at his previous rate of pay. The record reflects that Seidl left his employment voluntarily. As correctly noted by the Worker's Compensation Judge, this Court has held that where the claimant has been released to light-duty work and refuses his employer's offer of light-duty work at the same wages and hours, he is not entitled to SEB.[12]
*564 Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to bear the costs of this appeal.
AFFIRMED.
NOTES
[1] Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992).
[2] Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through Dep't of Transp. and Dev., 617 So.2d 880 (La.1993).
[3] Mart v. Hill, 505 So.2d 1120 (La.1987).
[4] Rosell v. ESCO, supra.
[5] Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990).
[6] 2003-2757 (La.App. 1 Cir. 9/17/04), 885 So.2d 1234, writ denied, 2004-2995 (La.3/18/05), 896 So.2d 1004.
[7] 885 So.2d at 1237, 1240-41.
[8] Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94), 639 So.2d 730, 750.
[9] Smith, supra.
[10] LSA-C.C.P. art. 966(A)(2).
[11] Hurst v. Baker Sand Control, 94-2463 (La. App. 1 Cir. 10/6/95), 671 So.2d 408, 412.
[12] Derrick v. Yamaha Power Sports of New Orleans, 03-184 (La.App. 5 Cir.6/19/03), 850 So.2d 829.