JOSE MENDEZ

VERSUS

TRANSIT MANAGEMENT OF SOUTHEAST
LOUISIANA, INC.

NO. 21-CA-228

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 20-1836
HONORABLE DIANE R. LUNDEEN, JUDGE PRESIDING

December 22, 2021

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED**

    **MEJ**
    **RAC**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
JOSE MENDEZ
    John B. Fox

COUNSEL FOR DEFENDANT/APPELLEE,
TRANSIT MANAGEMENT OF SOUTHEAST LOUISIANA, INC.
    Denise M. Ledet

**JOHNSON, J.**

Appellant, Jose Mendez, seeks review of the Office of Workers' Compensation Court District 7, Jefferson Parish's March 10, 2021 judgment finding that he failed to establish that his neck complaints were caused, aggravated, or accelerated by an October 4, 1993 workplace accident and denying workers' compensation benefits for his neck injuries. For the reasons that follow, we affirm the judgment of the trial court.

*FACTS AND PROCEDURAL HISTORY*

Mr. Mendez claims that, on October 4, 1993, while working as a sheet metal technician at appellee's, Transit Management of Southeast Louisiana, Inc., ("TMSEL"), Carrollton Station in New Orleans, he injured his lower back and neck at work when squatting to lift a large iron die to use on a machine. Mr. Mendez reported the accident at that time and has received workers' compensation benefits as a result of this accident.

On November 19, 2019, Mr. Mendez requested approval of a cervical MRI in connection with his continued complaints of neck pain. TMSEL denied this request, contending that Mr. Mendez injured only his lower back as a result of the accident and his cervical spine complaints are unrelated to the October 4, 1993 work accident and therefore non-compensable. TMSEL further argues that the appropriate amount of workers' compensation benefits have already been paid to and on behalf of Mr. Mendez in accordance with the Louisiana Workers Compensation Act ("LWCA").

Mr. Mendez then filed a Disputed Claim for Compensation on March 10, 2020 with the Office of Workers' Compensation ("OWC"), District 7. Mr. Mendez alleged that he was entitled to approval of the cervical MRI because the neck injury was related to his October 4, 1993 accident at work and also asserted a

claim for penalties and attorney's fees because TMSEL declined to approve the requested medical treatment.

TMSEL filed an answer on April 29, 2020, alleging that Mr. Mendez's claim had prescribed and he had been "afforded all medical and indemnity benefits to which he is entitled." TMSEL also averred that any and all disability alleged by Mr. Mendez was a result of a pre-existing condition which has resolved, and "any injuries allegedly sustained by the plaintiff were the result of his own willful intent to injury herself (sic) and/or intoxication and, as such, recovery herein is barred." In the alternative, TMSEL alleged that Mr. Mendez did not provide proper notice of his injury, as required by the LWCA. It also alleged Mr. Mendez's claim did not comply with the provisions of La. R.S. 23:1314 of the LWCA and, therefore, was premature and subject to dismissal. TMSEL asserted that Mr. Mendez's claims were not brought upon reasonable grounds and prayed for judgment in its favor and against Mr. Mendez for the entire cost of the proceedings pursuant to La. R.S. 23:1310.9 of the LWCA.

At the January 8, 2021 trial, Mr. Mendez's counsel rested his case after submitting the following into evidence: neurosurgeon Dr. Cuong Bui's report dated May 1, 2018; Dr. Bui's opinion letter dated May 25, 2018; Dr. Bui's report dated November 19, 2019; and the April 6, 2016 conference report of Dr. Troy Beaucoudray, a neurologist who specializes in pain management. Dr. Bui opined that the cervical disc herniation at C6-7 revealed by a prior cervical MRI performed on March 19, 2018 "could be responsible for neck and arm pain." After an examination on May 1, 2018, Dr. Bui found that Mr. Mendez may benefit from surgery.[1] On September 25, 2018, Dr. Bui opined that Mr. Mendez's need for the cervical surgery was "more likely than not related to the [October 4, 1993] job accident." Mr. Mendez returned to Dr. Bui on November 19, 2019 with

_____

[1] Mr. Mendez opted not to have the neck surgery because it was not approved.

complaints of worsening neck pain radiating to both shoulders. Dr. Bui wished to get an updated cervical MRI before proceeding with any possible treatments, as the disc "could also conceivably gotten better". TMSEL also denied the request for an updated cervical MRI, determining that the proposed diagnostics and treatment were not related to the October 4, 1993 accident. Mr. Mendez stressed in his post-trial memorandum that he first complained of neck pain to Dr. Richard Meyer, an orthopedist, on July 22, 1994, seven months after the accident; so, his current neurosurgeon, Dr. Bui, was "satisfied that the job injury . . . caused plaintiff's neck injury." Mr. Mendez also pointed out that Dr. Beaucoudray, a specialist in neurology and pain management, found that "Mr. Mendez's diagnoses as they relate to his work injury from 1993 include […] cervical and lumbar radiculopathy."

TMSEL's counsel also offered and introduced four exhibits into the record at trial: the certified medical records of TMSEL's choice of neurosurgeon, Dr. Najeeb Thomas; the certified medical records of TMSEL's choice of pain management physician, Dr. Joseph Crapazano; the November 13, 2020 Dr. Bui deposition transcript; and the certified medical records of Dr. Bui. TMSEL's choice of neurosurgeon and pain management physician, Doctors Najeeb Thomas and Joseph Crapanzano, respectively, both determined that Mr. Mendez's pain complaints were not related to the work accident where the cervical herniation first appeared on diagnostic testing on June 25, 2007. Counsel for TMSEL argued that the matter was purely a medical issue and asked that the court take the matter under advisement on the medical records and the briefs. In its post-trial memorandum, TMSEL argued that Mr. Mendez was not entitled to authorization of the cervical MRI as both Dr. Thomas and Dr. Crapanzano determined that Mr. Mendez's neck pain complaints were related to his psoriatic arthritis and not the October 1993 accident. TMSEL asserted there was a previous judicial

determination that the psoriatic arthritis was not related to the work accident, and Mr. Mendez's treating neurosurgeon determined that his neck pain was caused by a cervical herniation not present on any diagnostic testing until fourteen years after the work accident occurred.

In its March 10, 2020 judgment, the trial court found that Mr. Mendez "failed to carry his burden to establish that his neck complaints were caused, aggravated or accelerated by" the October 4, 1993 accident and his claims for workers' compensation medical benefits were denied as non-compensable pursuant to La. R.S. 23:1031(A)[2]. The trial court also denied Mr. Mendez's claim for penalties and attorney's fees pursuant to La. R.S. 23:1201[3], having found TMSEL reasonably controverted his right to workers' compensation benefits related to his neck injury, including the authorization of Dr. Bui's request to perform a cervical MRI. In her reasons for judgment, the trial judge opined that the opinions of Dr. Bui and Dr. Beaucoudray were less credible than the physicians who treated Mr. Mendez within the first fourteen years of his accident and concluded that the "totality of the evidence demonstrates that any neck issues from which Mr. Mendez suffers are not related to the 1993 work accident."

## ASSIGNMENT OF ERROR

Mr. Mendez avers that the trial court committed error when it found that his neck complaints were not related to his October 4, 1993 accident at work.

TMSEL counters that the court placed greater weight on the opinions of Dr. Thomas in 2015, Dr. Crapanzano in 2019, and also Dr. Paul Hubbell[4], a pain

---

[2] La. R.S. 23:1031(A) provides, "if an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."

[3] Under La. R.S. 23:1201(I), when an employer fails to pay workers' compensation benefits, penalties and attorney fees shall be assessed if the employer did not reasonably controvert the claim. *Redmann v. Bridgefield Cas. Ins. Co.*, 11-651 (La. App. 5 Cir. 2/28/12); 88 So.3d 1087, 1096, *writ denied*, 12-710 (La. 5/18/12); 89 So.3d 1192.

[4] Dr. Hubbell's operative reports and progress notes regarding Mr. Mendez's treatment are included in the medical records from Dr. Thomas and Dr. Crapanzano that TMSEL entered into evidence at the January 8, 2021 trial.

management specialist, in 2011. Each of those physicians attributed Mr. Mendez's neck complaints to his psoriatic arthritis, instead of the work-related accident. TMSEL also argued that trial court's decision was reasonable considering the objective diagnostic evidence presented, even though Mr. Mendez reported to Dr. Bui that he began experiencing neck pain immediately after the 1993 accident and that he first complained of neck injuries to his then treating orthopedist, seven months after the accident occurred.

*LAW AND ANALYSIS*

Factual determinations in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Downs v. Chateau Living Ctr.*, 14-672 (La. App. 5 Cir. 1/28/15); 167 So.3d 875, 879. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Seidl v. Zatarain's, Inc.*, 05-780 (La. App. 5 Cir. 3/28/06); 927 So.2d 557, 558–59. The Louisiana Supreme Court has emphasized that it is crucial that the reviewing court keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Rastegar v. Magnolia Sch., Inc.*, 10-176 (La. App. 5 Cir. 10/12/10); 51 So.3d 47.

> The plaintiff in a workers compensation suit has the burden of proving, by a preponderance of the evidence, that there is a work related disability. The testimony of the worker alone may be sufficient to discharge this burden of proof, absent other evidence which discredits or casts doubt on the worker's version of the incident and the testimony is supported by corroborating circumstances. The corroborating evidence may be provided by the testimony of spouses,

co-workers, friends or medical evidence. In evaluating this evidence, the uncontradicted testimony of a witness, even if the witness is a party, should be accepted as true, in the absence of circumstances casting suspicion on the reliability of the testimony.

*Donahoe v. Jefferson Council On Aging, Inc.*, 04-178 (La. App. 5 Cir. 10/26/04);

887 So.2d 549, 551–52 (Citations omitted.)

When doctors speak of cause they are essentially speaking of etiology—the origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff's disability by making manifest symptoms previously unnoticed. Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.

*Nash v. Ewing Timber, Inc.*, 431 So.2d 893, 898 (La App. 2d. 1983).

Under La. R.S. 23:1201(I), when an employer fails to pay workers' compensation benefits, penalties and attorney fees shall be assessed if the employer did not reasonably controvert the claim. *Bailey v. Rent A Ctr.*, 18-677 (La. App. 5 Cir. 5/29/19); 274 So.3d 797, 806. A claim is reasonably controverted if the employer has a valid reason or sufficient evidence to base the denial of benefits. *Williams v. Rowe-Treaudo,* 11-46 (La. App. 5 Cir. 9/27/11), 75 So. 3d 502, 508. Thus, to determine whether the claimant's right to benefits has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. *Arias v. Certified Coating, Inc.*, 05-446 (La. App. 5 Cir. 2/14/06); 924 So.2d 298, 302–03. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes,

such as the statutes awarding penalties and attorney fees, are to be strictly construed. *Id.*

Upon review of the record, we find that the trial court was not clearly wrong when it found that Mr. Mendez's neck injury was not caused by the October 4, 1993 accident. Immediately after the accident, Mr. Mendez initially complained of pain in his lumbar spine and right buttock. Mr. Mendez's first documented complaint regarding neck pain is found in the treatment records of orthopedist Dr. Richard Meyer, on June 29, 1994. In an MRI performed a month earlier, Dr. Meyer noted there was "NO MR EVIDENCE OF DISC HERNIATION, SPINAL CANAL STENOSIS, OR CORD COMPRESSION WITHIN THE CERVICAL SPINE." A cervical myelogram and CT scan performed in February 1995 were normal. An additional cervical MRI was performed in 2000. The doctor's opinion was that the "examination of the cervical spine [was] grossly within normal limits." From September 2001 through October 2006, Mr. Mendez complained of neck pain to Dr. Roger Smith, a neurosurgeon he began seeing in 1995. In 2007, Dr. Justin Lundgren, Mr. Mendez's former pain management physician, requested an MRI. That MRI showed mild disc protrusions at C5-6 and C6-7, which Dr. Lundgren determined were "likely due to degenerative changes."

Dr. Paul Hubbell, the pain management physician Dr. Lundgren referred Mr. Mendez to, treated Mr. Mendez for pain management from 2007 to 2011. Another cervical MRI was performed in 2008 at the request of Dr. Hubbell, which revealed disc herniations at C3-4, C4-5, C5-6, and C6-7. Dr. Hubbell determined that Mr. Mendez's pain complaints were caused by his psoriatic arthritis. Dr. Luis Espinoza, a rheumatologist, attributed Mr. Mendez's back injuries and psoriatic arthritis to the 1993 accident in 2013. No evidence was entered into the record regarding a specific diagnosis from Dr. Espinoza regarding Mr. Mendez's neck

injury. However, in response to a December 29, 2010 inquiry from TMSEL's counsel, Dr. Espinoza indicated that psoriatic arthritis was Mr. Mendez's non-work related diagnosis. Dr. Najeeb Thomas also opined that the psoriatic arthritis was unrelated to Mr. Mendez's work injury.

Although Mr. Mendez's more recent treating physicians, Dr. Bui and Dr. Beaucoudray, found that his 1993 work injury was the cause of his recent neck pain, we cannot say that the Office of Workers' Compensation Court was manifestly erroneous or clearly wrong when it found that TMSEL reasonably controverted Mr. Mendez's claims and his neck injury was not caused by the 1993 accident; therefore, Mr. Mendez was not entitled to further benefits in relation to his neck complaints. TMSEL had sufficient medical evidence to justify its belief that Mr. Mendez's neck complaints were unrelated to the October 4, 1993 work accident. Further, the medical records and expert opinions entered into evidence support the trial court's finding that TMSEL reasonably controverted Mr. Mendez's request. Thus, the trial court did not err when it declined to award penalties and attorney's fees for TMSEL's failure to authorize further medical treatment for Mr. Mendez's neck pain, including the cervical MRI, and we will not disturb the trial court's decision on appeal.

## DECREE

For the foregoing reasons, we affirm the March 10, 2021 judgment of the Office of Workers' Compensation Court. Costs of this appeal are assessed against the appellant.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 22, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-228

### E-NOTIFIED

OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
DENISE M. LEDET (APPELLEE)

### MAILED

HON. DIANE R. LUNDEEN
(DISTRICT JUDGE)
OFFICE OF WORKER'S COMPENSATION
DISTRICT #7
880 W. COMMERCE ROAD
SUITE 401
HARAHAN, LA 70123

JOHN B. FOX (APPELLANT)
ATTORNEY AT LAW
4240 CANAL STREET
NEW ORLEANS, LA 70119

ALAN J. YACOUBIAN (APPELLEE)
ATTORNEY AT LAW
701 POYDRAS STREET
SUITE 4700
NEW ORLEANS, LA 70139