JOSE FLORES MORAN

VERSUS

AMTRUST NORTH AMERICA AND
JACQUES-IMO CAFE, LLC

NO. 22-CA-253

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
PARISH OF , STATE OF LOUISIANA
NO. 20-1982, DIVISION " "
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

March 01, 2023

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
    **JJM**
    **SMC**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ROSALBA MORAN ON BEHALF OF HER MINOR CHILD JOSE FLORES
MORAN
    Pedro F. Galeas

COUNSEL FOR DEFENDANT/APPELLEE,
JACQUES-IMO CAFE, LLC AND AMTRUST NORTH AMERICA
    Lawrence B. Frieman

**MOLAISON, J.**

In this appeal, which arises from a workers' compensation judgment, the appellant/Claimant seeks review of the Office of Workers' Compensation (OWC) Judge's ruling which denied him additional benefits, and also held that he was not entitled to a lump sum payment of $50,000 pursuant to La R.S. 23:1221(4)(s)(iii)(bb). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying facts of the claim which form the basis of this action are not in dispute. The appellant/Claimant, Jose Moran, was employed by Jacques-Imo Café, L.L.C. ("Jacques-Imo's"), on May 5, 2018, when he sustained injuries while in the scope of his employment. On that date, Mr. Moran, age 14 at the time, was in the process of transporting hot cooking oil down a stairwell when he fell and was covered by the oil, resulting in second and third degree burns to multiple parts of his body. Mr. Moran asserts that several aspects of his job, including requiring him to transport "dangerous chemicals," meant that he was illegally employed by Jacques-Imo's. After the accident, Mr. Moran received 100 weeks of Temporary Total Disability benefits and Permanent Partial Disability benefits, and coverage for the treatment of his injuries was provided by AmTrust North America ("AmTrust").

On March 16, 2020, Mr. Moran's mother filed a disputed claim for compensation and a petition for damages on his behalf at the Office of Workers' Compensation, District 7. In his petition, Mr. Moran sought compensation for his past, present and future medical expenses, lost wages, and loss of earning capacity. On May 20, 2020, AmTrust and Jacques-Imo's filed a Declinatory Exception of Lack of Subject Matter jurisdiction. On January 25, 2021, the OWC Judge granted

the exception and dismissed with prejudice all of Mr. Moran's claims brought under Title 23, which pertain to child labor laws.[1]

On August 9, 2021, a trial on the merits was held. In its judgment of February 24, 2022, the OWC Judge found that while Mr. Moran had shown a causal connection between the work accident and his injuries, he had not proven that he is disabled from work and unable to earn 90 percent or more of his pre-injury wages. The trial court also found that Mr. Moran had not demonstrated his entitlement to a $50,000 lump sum pursuant to La. R.S. 23:1221(4)(s)(iii)(bb), which requires that a claimant sustain third-degree burns of forty percent or more of his total body surface.  The instant appeal followed.

## ASSIGNMENTS OF ERROR

1. The trial court erred in finding that the plaintiff failed to meet his burden that he is disabled from work as a result of injuries sustained in the work accident and failed to meet his burden that he is unable to earn 90% or more of his average pre-injury wages.

2. The trial court erred in finding that the plaintiff failed to meet his burden to show that he is entitled to $50,000.00 pursuant to La. R.S. 23:1221 (4)(s)(iii)(bb).

## LAW AND ANALYSIS

Factual determinations in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Downs v. Chateau Living Ctr.*, 14-672 (La. App. 5 Cir. 1/28/15), 167 So.3d 875, 879. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Seidl v. Zatarain's, Inc.*, 05-780 (La. App. 5 Cir.

---

[1]    The relevant statutes referenced in the judgment were: La. R.S. 23:161(12)(14), La. R.S. 23:211 and La. R.S. 23:215.  These particular claims were first raised by Mr. Moran in a tort suit filed in civil district court for Orleans Parish. As explained by Mr. Moran's counsel in the opposition to the Declinatory Exception, although such a petition had previously been permissible at the time it was filed, the Louisiana Supreme Court's recent decision in *Griggs v. Bounce N' Around Inflatables, L.L.C.,* 18-0726 (La. 1/30/19), 281 So.3d 628, held that the exclusive remedy for a minor hired in violation of the Child Labor Laws is under the workers' compensation law.

3/28/06), 927 So.2d 557, 558-59. The Louisiana Supreme Court has emphasized that it is crucial that the reviewing court keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Rastegar v. Magnolia Sch., Inc.*, 10-176 (La. App. 5 Cir. 10/12/10), 51 So.3d 47.

***The disability determination for Supplemental Earning Benefits***

La. R.S. 23:1221(3)(a)(i) provides the criteria for determining the eligibility for Supplemental Earning Benefits (SEB) as follows:

> (3) Supplemental earnings benefits.
>
> (a)(i) For injury **resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury,** supplemental earnings benefits, payable monthly, equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his wages by fifty-two and then dividing the product by twelve.

[Emphasis added.]

The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. *Pinkins v. Cardinal Wholesale Supply Co.*, 619 So.2d 52, 55 (La. 1993). Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a

preponderance of the evidence that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Seal v. Gaylord Container Corp.*, 97-688 (La. 12/02/97), 704 So.2d 1161, 1166. In determining whether a workers' compensation claimant is entitled to SEBs, a court must weigh all evidence, medical and lay, to determine if the claimant has met his or her burden of proof. *Dupree v. Ace Home & Auto*, 96-745 (La. App. 3 Cir. 12/26/96), 685 So.2d 683, *writ denied*, 97-0283 (La. 3/27/97), 692 So.2d 393. As stated above, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

In the instant case, the following evidence was offered at trial with respect to Mr. Moran's ability to work and earn 90% or more of his average pre-injury wages.

Dr. Jeffrey Carter testified that he had been Mr. Moran's treating physician since the date of his accident. Dr. Carter identified his previous assessment that Mr. Moran could perform "regular work," but that the work would have to be out of the sunlight due to the nature of the injuries. In addition, Mr. Moran cannot be exposed to prolonged heat, such as from a stove or oven, and also could not work in environments that are not air-conditioned. Dr. Carter agreed with the results of Mr. Moran's Functional Capacity Exam ("FCE") which concluded "'Jose's [sic] capable of working in a position of medium strength category and that he's only capable of working seven hours per day." On cross-examination, Dr. Carter further explained that among the jobs Mr. Moran could perform were positions such as a cashier, greeter, cashier host, greeter host, and cashier customer service, if within restrictions. Additionally, he approved jobs that Mr. Moran could perform which would let him earn more than his prior average weekly wage. Dr. Carter also stated that he had released Mr. Moran to play outdoor soccer at night.

Dr. Larry Stokes, a Vocational Rehabilitation Counselor who did an assessment of Mr. Moran when he was 16 years old, also testified. Dr. Stokes concluded that Mr. Moran could earn the $10 per hour he was making pre-accident at Jacques-Imo's, as long as he stayed within the limitations of sitting and working outside and not lifting over 40 pounds. Dr. Stokes also opined that, based on his salary at the time of his injury, Mr. Moran would not experience a wage loss upon graduation from high school, taking into account the "average weekly wage under Workers' Compensation" and the jobs that were identified as suitable for Mr. Moran's restrictions.

Mr. Moran testified at trial that, following his injuries, he lacks stamina and is affected by hot temperatures. He stated that he still played soccer occasionally and worked as a painter for his uncle. Mr. Moran indicated that he did not want to get another job before graduation because of his injuries, but that he would eventually apply for positions that were within the range of his restrictions.

The evidence presented at trial showed that Mr. Moran is capable of returning to work, with restrictions, and that he can earn the same amount that he had been paid pre-injury. Based on the foregoing, we find that the trial court's determination, that Mr. Moran was not entitled to SEBs, is reasonably supported by the record.

### Mr. Moran's earning capacity

La. R.S. 23:1221(3)(a)(i) is clear that the benchmark for the purpose of calculating earning capacity in a workers' compensation claim begins with the amount of wages "at the time of injury," not after. Mr. Moran argues, however, that his age and lack of a work history, and allegations of illegal employment, should all serve as a basis for him to receive SEBs into the future. In seeking an award under these theories of recovery, Mr. Moran is essentially asking for damages resulting from a loss of earning capacity. As observed above, the entirety

of Mr. Moran's claims under Title 23 were dismissed pursuant to an exception, and Mr. Moran did not seek review of that ruling. Accordingly, any related issues are not before us on appeal.

Mr. Moran also argues that the Louisiana Supreme Court's decision in *Griggs v. Bounce N' Around Inflatables, L.L.C.*, *supra*, should be limited to its particular facts. In *Griggs*, a 15-year-old worker was injured after falling from a forklift, and having an inflatable item shift from the same forklift and fall on top of him. Following a jury trial, the minor was awarded both general and special damages, plus legal interest and costs. On appeal, the First Circuit reversed the awards for the minor's tort claims on the basis that his exclusive remedy was instead contained in the workers' compensation law. The Supreme Court affirmed the First Circuit's opinion upon finding that the plain language of La. R.S. 23:1035 applied to "every person performing services." *Griggs*, 281 So.3d at 631. The court went on to state:

> In the absence of any legislative exemption of minors from the exclusivity provisions of the workers' compensation provisions, we are powerless to recognize any action in tort for minors who are negligently injured while illegally employed or engaged in illegal tasks. Indeed, La. R.S. 23:1020.1(D) (3) explicitly provides that the sole authority to liberalize or broaden the workers' compensation statutes rests exclusively with the legislature…

*Id.,* at 632. The court concluded:

> [t]here may be instances where concepts of equity and/or socioeconomic reasons justify a change to the statutory law. However, "this is not a matter for the Court; it addresses itself solely to the legislative department of our government."

*Id*.

In applying *Griggs* to the instant facts, we similarly find that the types of damages sought by Mr. Moran are not provided for under the current framework of workers' compensation law.

While cognizant of the deference owed to the rule set forth in *Griggs*, we follow the law with grave concerns over its practical effect in cases such as this one. A 14-year-old is without the ability to enter into an employment contract, which speaks to the reality that minors require adult guidance until they reach a certain age. It is logical that this protection would extend to minors who experience adverse consequences that result from a businesses' failure to follow the laws intended to safeguard this same vulnerable class of persons. Here, Mr. Moran was hired illegally, even without a certificate, and ordered to perform an inherently dangerous task that most adults would be hesitant to attempt on their own. The law, as it stands, overlooks the illegality of employment as well as the breaches of safety and common sense that led to Mr. Moran's injuries, while simultaneously allowing the negligent employer to benefit from the protection of the Workers' Compensation statutes. While equity should arguably allow Mr. Moran's claims for substantial life-long injury to proceed as a tort, this Court has no ability to fashion such relief.

### *Eligibility determination under La. R.S. 23:1221(4)(s)(iii)(bb)*

In this assignment of error, Mr. Moran contends that the trial court erred in failing to award him a lump sum payment for his injuries under La. R.S. 23:1221(4), which provides in relevant part:

> (s)(i) In addition to any other benefits to which an injured employee may be entitled under this Chapter, any employee suffering an injury as a result of an accident arising out of and in the course and scope of his employment shall be entitled to a sum of fifty thousand dollars, payable within one year after the date of the injury.
>  . . .
> (ii) In any claim for an injury, it must be established by clear and convincing evidence that the employee suffers an injury and that such resulted from an accident arising out of and in the course and scope of his employment. Nothing herein shall limit the right of any party to obtain a second medical opinion or, in appropriate cases, the opinion of an additional medical opinion medical examiner pursuant to R.S. 23:1123.

(iii) Only the following injuries shall be considered injuries for which benefits pursuant to this Subparagraph may be claimed:

. . .

(bb) Third degree burns of forty percent or more of the total body surface.

Contained in the record is Exhibit P-3, which is a report entitled "Initial Burn" from the University Medical Center New Orleans Burn Center regarding Mr. Moran's treatment on the date of his accident. The report indicates that 36% of Mr. Moran's "TBSA," or total body surface area, was burned at the time of the accident. At trial, Dr. Carter recalled that the "initial estimate" was Mr. Moran's burns affected anywhere from 30% to 40% of his body. Dr. Carter speculated that, in the future, Mr. Moran's "burn scars" could expand to cover 36% to 44% of his body. In its reasons for judgment, the OWC Judge determined that the 36% estimate in the initial report after Mr. Moran's accident was applicable, and declined to make an award under La. R.S. 23:1221(4)(s)(iii)(bb) on the basis of a "*likelihood* of the total burn surface area of the plaintiff's skin growing in excess of 40%." [Emphasis added.]

In *Morris v. Reve, Inc.*, 95-310 (La. App. 5 Cir. 10/18/95), 662 So.2d 525, 528, *writ denied*, 95-3037 (La. 2/16/96), 667 So.2d 1055,[2] we discussed the "clear and convincing standard" used in workers' compensation cases:

> The new 'clear and convincing evidence' standard [in the 1989 revision to the compensation laws] is a heavier burden of proof than the usual civil case 'preponderance of the evidence' standard, but is less burdensome than the 'beyond a reasonable doubt' standard of a criminal prosecution. *See, Bryant v. Giani Investment Co.*, 626 So.2d 390, 392 (La. App. 4th Cir. 1993), and the cases cited therein. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence.

In the instant case, the medical record offered at trial demonstrated that Mr. Moran had suffered burns on an estimated 36% of his body. As can be seen in Exhibit D-

---

[2] *Citing, Lannes v. Jefferson Door Co.*, 94-1 (La. App. 5 Cir. 5/11/94), 638 So.2d 250.

3, which is a report from Dr. Carter, the 36% total burn area of Mr. Moran's body consisted of both "2nd and 3rd burns." Nowhere in the record, however, is an explanation provided of which part of the total area consisted of third-degree burns versus second-degree burns. As discussed above, the distinction is significant for the purposes of recovery under La. R.S. 23:1221. Even if we were to accept the premise that expanding scar tissue is the equivalent of a "burn" under La. R.S. 23:1221, there is no evidence to suggest which scars resulted from which type of burn. Accordingly, it makes Dr. Carter's prediction about Mr. Moran's future potential scarring to be that much more speculative. We see no error in the OWC Judge's ruling that this portion of Mr. Moran's claim was not supported by clear and convincing evidence.

Based on the foregoing, we find no error in the OWC Judge's ruling that Mr. Moran was not entitled to a lump sum benefit under La. R.S. 23:1221.

## CONCLUSION

Upon review of the record, we find no manifest error in the OWC Judge's rulings that Mr. Moran has not established that he is entitled to SEBs or to the lump sum payment of $50,000 pursuant to La. R.S. 23:1221(4)(s)(iii)(bb), as both conclusions are reasonably supported by the record. For the foregoing reasons, the judgment is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-CA-253**

### E-NOTIFIED

OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
PEDRO F. GALEAS (APPELLANT)          LAWRENCE B. FRIEMAN (APPELLEE)

### MAILED

BRADLEY P. NACCARI (APPELLEE)
ATTORNEY AT LAW
107 NORTH THEARD STREET
COVINGTON, LA 70433